UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

DAHKEEM MILLER; JOSE GUITY;        Case No. 21-cv-2616 (PKC) (KNF)
TRAVIS BUTLER; ARIAN PERALTA;
GARY GARCIA, JR.; BOBBY DEE
CRUZ, and ISAIAH MUHAMMAD,
on their own behalf and on behalf
of others similarly situated,

               Plaintiffs,

       -v-

CITY OF NEW YORK; CYNTHIA BRANN;
TIMOTHY FARRELL; HAZEL JENNINGS;
and BRENDA COOKE,

            Defendants.
-------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF THE CLASS ACTION SETTLEMENT, CONDITIONAL
CERTIFICATION OF THE SETTLEMENT CLASS, APPOINTMENT OF THE
<u>CLAIMS ADMINISTRATOR, AND APPOINTMENT OF CLASS COUNSEL</u>**

CUTI HECKER WANG LLP       Alexander A. Reinert
John R. Cuti                   55 Fifth Avenue, Room 1005
Eric Hecker                   New York, NY 10003
Alexander Goldenberg       (646) 592-6543
Daniel Mullkoff              areinert@yu.edu
305 Broadway, Sixth Floor
New York, NY 10007
(212) 620-2600
jcuti@chwllp.com
ehecker@chwllp.com
agoldenberg@chwllp.com
dmullkoff@chwllp.com


*Attorneys for Plaintiffs*

## **TABLE OF CONTENTS**

Table of Authorities ............................................................................................................ iv

PRELIMINARY STATEMENT ..........................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND.............................................................1

A.      Overview of the Litigation................................................................................1

B.      Discovery and Settlement Negotiations..............................................................3

SUMMARY OF THE SETTLEMENT TERMS....................................................................4

A.      The Settlement Amount....................................................................................4

B.      Class Members ................................................................................................5

C.      Releases .........................................................................................................6

D.      Attorneys' Fees and Costs ................................................................................6

E.      Service Payments ............................................................................................6

F.      Settlement Claims Administrator ......................................................................7

G.      Claims Administration Procedure .....................................................................7

ARGUMENT....................................................................................................................10

I.      PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE ..............10

A.      Adequacy of the Named Plaintiffs and Their Counsel .................................133

B.      The Proposed Settlement Resulted from Arm's-Length Negotiations...........166

C.      The Proposed Settlement Provides Adequate Relief for the Class ................17

        1.      The costs, risks, and delay of trial and appeal (*Grinnell* factors 1, 4, 5 & 6)........18

        2.      Effectiveness of the Proposed Method of Distributing Relief............................21

        3.      The Terms of Any Proposed Award of Attorneys' Fees and Expenses...............23

        4.      Any Agreement Required to be Identified Under Rule 23(e)(3)..........................24

        5.      Other *Grinnell* Adequacy Factors....................................................................255

D.      The Proposed Settlement Treats Class Members Equitably .......................3030

II.     CONDITIONAL CERTIFICATION OF THE CLASS IS APPROPRIATE ..................31

A.      Numerosity....................................................................................................32

B.      Commonality.................................................................................................32

C.      Typicality......................................................................................................33

D.      Adequacy of the Named Plaintiffs and Their Counsel ....................................34

E.      Certification Is Proper Under Rule 23(b)(3)....................................................35

     1.     Common Questions Predominate ........................................................................35

     2.     A Class Action Is a Superior Mechanism ..........................................................36

III.    PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL ..........37

IV.    THE NOTICE PLAN AND AWARD DISTRIBUTION PROCESS ARE APPROPRIATE    ........................................................................................................37

V.     RUST CONSULTING, INC. SHOULD BE APPOINTED AS CLAIMS ADMINISTRATOR ...........................................................................................................38

CONCLUSION.......................................................................................................................39

**<u>TABLE OF AUTHORITIES</u>**

**<u>Cases</u>**

*Acevedo v. Workfit Med. LLC*, 187 F. Supp. 3d 370 (W.D.N.Y. 2016).......................................15

*Alleyne v. Time Moving & Storage Inc.,* 264 F.R.D. 41 (E.D.N.Y. 2010)..................................26

*Almighty Supreme Born Allah v. Milling*, No. 11 Civ. 668, 2016 WL 1311997
(D. Conn. Apr. 4, 2016)...............................................................................................28

*Almighty Supreme Born Allah v. Milling*, 876 F.3d 48 (2d Cir. 2017) ......................................28

*Amchen Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ..............................................................13

*Ayzelman v. Statewide Credit Servs. Corp.*, 242 F.R.D. 23 (E.D.N.Y. 2007)......................passim

*Ballinger v. Advance Magazine Publishers, Inc.,* No. 13 Civ. 4036, 2014 WL 7495092 (S.D.N.Y.
Dec. 29, 2014)....................................................................................................26, 27

*Betances v. Fischer*, 304 F.R.D. 416 (S.D.N.Y. 2015) ...............................................................35

*Butler v. Suffolk Cty.*, 289 F.R.D. 80 (E.D.N.Y. 2013)...............................................................33

*Cazares v. AVA Rest. Corp.*, No. 15 Civ. 477, 2017 WL 1229727 (E.D.N.Y. Mar. 31, 2017) ....36

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ............................................passim

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995).....................................32

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91 (2d Cir. 2007) ...13, 35

*County of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. 1422 (E.D.N.Y. 1989) .................31

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) .......................................................16, 17

*Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006).......................................................13

*Diaz v. E. Locating Serv., Inc.,* No. 10 Civ. 4082, 2010 WL 5507912
(S.D.N.Y. Nov. 29, 2010).............................................................................................26

*Easterling v. Connecticut, Dep't of Correction*, 265 F.R.D. 45 (D. Conn. 2010) .......................14

*Flores v. Mamma Lombardi's of Holbrook, Inc.,* 104 F. Supp. 3d 290 (E.D.N.Y. 2015) ...........36

*Ford v. Bender*, No. 07 Civ. 11457, 2012 WL 262532 (D. Mass. Jan. 27, 2012)......................28

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005)..................................28, 30, 35

*Fulton Cnty. Employees' Ret. Sys. on Behalf of Goldman Sachs Grp. Inc. v. Blankfein*, No. 19 Civ. 1562, 2022 WL 4292894 (S.D.N.Y. Sept. 16, 2022) ....................................................24

*Gen. Tel. Co. of the Southwest. v. Falcon*, 457 U.S. 147 (1982)..................................................32

*Gordon v. Vanda Pharms. Inc.*, No. 19 Civ. 1108, 2022 WL 4296092 (E.D.N.Y. Sept. 15, 2022) ...............................................................................................11, 17

*Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir. 1968)....................................................................36

*Greenburger v. Roundtree*, No. 17 Civ. 03295, 2020 WL 6561598 (S.D.N.Y. Jan. 16, 2020)....29

*Hall v. Children's Place Retail Stores, Inc.*, 669 F. Supp. 2d 399 (S.D.N.Y. 2009)...................29

*Hall v. ProSource Techs., LLC*, No. 14 Civ. 2502, 2016 WL 1555128 (E.D.N.Y. Apr. 11, 2016) ................................................................................... 11, 25, 26

*Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472, 2012 WL 5862749 (S.D.N.Y. Nov. 15, 2012)................................................................................................................................11

*Hilton v. Wright*, 235 F.R.D. 40 (N.D.N.Y. 2006) ...................................................................15

*In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171 (S.D.N.Y. 2014) .....................21

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000) ................................................................................................. 18, 19, 25, 27

*In re Crazy Eddie Secs. Litig.*, 824 F. Supp. 320 (E.D.N.Y. 1993) ............................................29

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29 (2d Cir. 2009) ................................13

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995)................................................................................................................................31

*In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686 (S.D.N.Y. 2019) ...........................passim

*In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12 Civ. 8557, 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014)................................................................................................................................18

*In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467 (S.D.N.Y. 2009).............................20

*In re Ivan F. Boesky Sec. Litig.,* 948 F.2d 1358 (2d Cir. 1991)..................................................10

*In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242 (2d Cir. 2011)............13

*In re Nassau County Strip Search Cases*, 461 F.3d 219 (2d Cir. 2006) .....................................36

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11 (E.D.N.Y. 2019)...........................................................................................................................21, 27

*In re Petrobras*, 862 F.3d 250 (2d Cir. 2017)............................................................................32

*In re Take Two Interactive Sec. Litig.*, No. 06 Civ. 1131, 2010 WL 11613684 (S.D.N.Y. June 29, 2010)........................................................................................................................................24

*In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001)............................13

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004)..........................................11

*In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319 (S.D.N.Y. 2005) ...................................21

*Ingles v. Toro*, 438 F. Supp. 2d 203 (S.D.N.Y. 2006) .................................................................19

*Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ..............11

*Johnson v. Nextel Comms. Inc.*, 780 F.3d 128 (2d Cir. 2015)......................................................33

*Lea v. Tal Educ. Grp.*, No. 18 Civ. 5480, 2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021)......17, 22

*Lora v. To-Rise, LLC*, No. 16 Civ. 3604,  2020 WL 8921400 (E.D.N.Y. June 3, 2020).............15

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) ............................................................32, 34

*Martens v. Smith Barney, Inc.,* 181 F.R.D. 243 (S.D.N.Y.1998) ................................................25

*Matheson v. T–Bone Rest., LLC*, No. 09 Civ. 4214, 2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011) ............................................................................................................26

*Mendez v. MCSS Rest. Corp.*, No. 16 Civ. 2746, 2022 WL 3704591 (E.D.N.Y. Aug. 26, 2022) 15

*Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650 (S.D.N.Y. 2015) ......................................18

*Mikhlin v. Oasmia Pharm. AB*, No. 19 Civ. 4349, 2021 WL 1259559 (E.D.N.Y. Jan. 6, 2021)..19

*Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010)....................................................................36

*Newman v. Stein,* 464 F.2d 689 (2d Cir. 1972)....................................................................10, 27

*Nichols v. Noom, Inc.*, No. 20 Civ. 3677, 2022 WL 2705354 (S.D.N.Y. July 12, 2022)............15

*Parker v. City of New York*, No. 15 Civ. 6733, 2017 WL 6375736 (E.D.N.Y. Dec. 11, 2017)....25

*Parker v. City of New York*, No. 15 Civ. 6733, 2018 WL 6338775 (E.D.N.Y. Dec. 4, 2018).....14, 15, 22, 27

*Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014) ........................................................................33

*Peoples v. Annucci*, 180 F.Supp.3d 294 (S.D.N.Y. 2016) .........................................................14

*Robertson v. National Basketball Ass'n*, 389 F. Supp. 867 (S.D.N.Y. 1975)................................14

*Robidoux v. Celani,* 987 F.2d 931 (2d Cir.1993)..........................................................34

Rosenfeld v. Lenich, No. 18 Civ. 6720, 2021 WL 508339 (E.D.N.Y. Feb. 11, 2021)................24

*Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124
    (S.D.N.Y. Apr. 16, 2012) .........................................................................26

*Shariff v. Goord*, 235 F.R.D. 563 (W.D.N.Y. 2006)......................................................15

*Stinson v. City of New York*, 256 F. Supp. 32 283 (S.D.N.Y. 2017).............................................27

*Stinson v. City of New York*, 282 F.R.D. 360 (S.D.N.Y. 2012)....................................................34

*Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193 (S.D.N.Y. 1992).............................................32

*V.W. by & through Williams v. Conway*, 236 F. Supp. 3d 554 (N.D.N.Y. 2017) .................33, 34

*Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25,
    2007)..............................................................................................20

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) ................................11, 16

*Walsh v. Northrop Grumman Corp.*, 162 F.R.D. 440 (E.D.N.Y. 1995) ......................................14

*Wright v. Stern*, 553 F.Supp.2d 337 (S.D.N.Y. 2008) ................................................27

## Other Authorities

Theodore Eisenberg, Geoffrey Miller & Roy Germano, *Attorneys' Fees in Class Actions: 2009-
2013*, 92 N.Y.U. L. Rev. 937 (2017)...................................................................24

William B. Rubinstein, Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (5th ed.
    2011).....................................................................................7, 11, 12

## Rules

Federal Rule of Civil Procedure 23.....................................................................passim

## PRELIMINARY STATEMENT

Subject to the Court's approval, Plaintiffs Jose Guity, Arian Peralta, Gary Garcia, Jr., Bobby Dee Cruz, and Isaiah Muhammad ("Plaintiffs" or the "Named Plaintiffs")[1] and Defendants the City of New York, Cynthia Brann, Timothy Farrell, Hazel Jennings, and Brenda Cooke ("Defendants" or "the City") have agreed to settle this damages class action.  If the Court approves the parties' proposed settlement, the City will make at least $53,018,550.00 available to be claimed by 4,413 Class Members.  The proposed settlement is the result of more than 18 months of intensive arm's-length negotiations supervised by the director of the Court's mediation program.

Because the proposed settlement is fair and reasonable and satisfies all of the criteria for preliminary approval, Plaintiffs respectfully request that the Court:  (1) conditionally certify the proposed Settlement Class under Federal Rule of Civil Procedure 23(b)(3); (2) grant preliminary approval of the Stipulation, attached as Exhibit 1 to the Declaration of Alexander A. Reinert ("Reinert Decl."); (3) appoint Cuti Hecker Wang LLP and Alexander A. Reinert as Class Counsel; and (4) appoint Rust Consulting, Inc. as Administrator.[2]

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    Overview of the Litigation

On March 25, 2021, Plaintiffs Dahkeem Miller, Travis Butler, and Jose Guity filed a class action complaint alleging that Defendants, through the operations of the New York City Department of Correction ("DOC"), had violated the Constitution by housing substantial

---

[1] As discussed below, Plaintiffs Dahkeem Miller and Travis Butler accepted Rule 68 Offers of Judgment and are no longer parties.
[2] Defendants consent to the Plaintiffs' application, as noted in the proposed settlement Stipulation. Defendants, however, have not approved the contents of this application (other than the Stipulation and its exhibits), and do not necessarily agree with all contentions by plaintiffs in this application.

numbers of people who were awaiting trial or parole revocation hearings (collectively, "Pretrial Detainees") in restrictive and punitive conditions of confinement without due process.  ECF 1. On May 25, 2021, Plaintiffs filed a First Amended Complaint elaborating their claims and adding three additional Plaintiffs (Arian Peralta, Gary Garcia, Jr,, and Bobby Dee Cruz).  ECF 22.  With Defendants' consent, Plaintiffs filed a Second Amended Complaint on August 23, 2021, which is the operative complaint.  ECF 37.  Defendants filed an Answer on September 7, 2021.  ECF 38.

Plaintiffs alleged that, for years and without providing any process whatsoever, Defendants placed DOC Pretrial Detainees in restrictive and punitive conditions in three specific facilities:  West Facility on Rikers Island ("West"); the second and third floors of North Infirmary Command on Rikers Island ("NIC"); and the "9 South" housing area of the now-closed Metropolitan Detention Center (collectively, the "Covered Facilities").  Plaintiffs alleged that the highly restrictive and punitive conditions in the Covered Facilities, and the fact that no process was afforded before Plaintiffs were placed in them, violated the Due Process Clause of the Fourteenth Amendment to the United States Consitution and numerous New York City Board of Correction ("BOC") Minimum Standards.  As the Second Amended Complaint alleges, people confined in the Covered Facilities were denied sufficient access to programing, recreation, a dayroom, natural light, freedom of movement, and psychological monitoring, among other deprivations.  At times, the conditions approached those experienced in solitary confinement.

Plaintiffs alleged that these practices violated the constitutional rights of Pretrial Detainees because Defendants provided no hearings or other process establishing that placement of a person in the Covered Facilities was necessary to ensure the safe and secure operation of the jails.  Plaintiffs further alleged that Defendants' purpose in confining Class Members in the

Covered Facilities was to punish them.  Because Pretrial Detainees may not be punished until the government has secured a formal adjudication of guilt, and may not be deprived of their liberty without due process, Plaintiffs alleged that their confinement in the Covered Facilities violated their procedural and substantive due process rights and those of similarly situated detainees.  On behalf of themselves and all others similarly situated, Plaintiffs sought compensation for the time they spent in the Covered Facilities.[3]

## B. Discovery and Settlement Negotiations

On September 24, 2021, this Court entered a Civil Case Management Plan and Discovery Order.  ECF 44.  Three days later, the Court referred the case for mediation through the Court's mediation program.  Since that time, the Parties have engaged in extensive discovery and settlement negotiations, aided by more than ten conferences with the Court-appointed mediator, Rebecca Price.  Reinert Decl. ¶ 10.  In addition, Plaintiffs sought and obtained discovery from Defendants that included (1) two site visits to examine and photograph the Covered Facilities; (2) depositions of DOC employees concerning the administration of the housing policies at issue and the location of relevant documents; and (3) the production of approximately 8,000 pages of documents.  *Id.* ¶ 10.  Plaintiffs obtained additional information from the BOC pursuant to New York's Freedom of Information Law and by reviewing publicly available information maintained by BOC and other agencies and organizations.  *Id.*  Plaintiffs also retained the services of a leading expert in the psychological impact of isolation confinement, who reviewed the Named Plaintiffs' jail and medical records and interviewed them regarding the conditions they exerpienced.  *Id.* ¶ 11.

---

[3] Under the proposed settlement, the Class Period ends on June 30, 2022 because, as explained below, as of July 1, 2022, Defendants changed their practices for assigning detainees to West and NIC, and 9 South is closed.

The documents produced in discovery revealed the nature and history of Defendants' practice of using the Covered Facilities to house so-called "problematic inmates." *Id.* ¶ 10. The documents enabled Plaintiffs' counsel to evaluate the strengths and weaknesses of Plaintiffs' claims and Defendants' potential exposure. *Id.* ¶¶ 10-13. Counsel expended significant time and effort analyzing the documents, including building spreadsheets to calculate the amount of time individual class members were housed in the Covered Facilities. *Id.* ¶ 13.

Throughout the settlement process, Plaintiffs' counsel engaged in detailed and extensive arm's-length negotiations regarding critical terms, from monetary compensation, to the substance and mechanics of providing notice to Class Members, to the manner in which claims will be submitted and processed. *Id.* ¶¶ 14-15. Ms. Price assisted in mediating many of the disputes that arose between the Parties. *Id.* ¶ 15. Indeed, when the Parties reached an impasse with respect to monetary compensation, it was the mediator's proposal that formed the basis for the agreement that is now being presented to this Court. *Id.* ¶¶ 14-15.

## SUMMARY OF THE SETTLEMENT TERMS

### A. The Settlement Amount

Defendants have agreed to pay to each Class Member damages in the amount of $400.00 per day for each day he was housed in any of the Covered Facilities during the Class Period (between March 18, 2018, and June 30, 2022).[4]  Reinert Decl., Ex. 1 ("Stipulation") ¶ 81. In addition, Defendants have agreed that for each day a Class Member was housed in any of the Covered Facilities during the Class Period while diagnosed with a serious mental illness or while under the age of 22, the damages will be increased to $450.00 per day. *Id.* ¶ 82. The Parties have agreed that Class Counsel will apply to this Court for an order awarding costs and

---

[4] The Covered Facilities housed only men.

attorneys' fees totaling no more than 25 percent of the amount paid to Class Members.  *Id.* ¶ 95.

The Parties have agreed that Defendants are not obligated to pay compensation if the City had either of two reasons for housing a person in the Covered Facility.  First, some Pretrial Detainees were held in the Covered Facilities pursuant to valid judicial orders requiring them to be housed separately from other people for security purposes.  Reinert Decl. ¶ 19.  Any time spent in a Covered Facility for this reason is referred to as "Lock-Down Time" and is not compensable.  Stipulation ¶¶ 20-22.  Second, the proposed settlement recognizes that West is a contagious disease facility and that beginning in February 2020, Defendants sometimes used it for short placements for legitimate contagious-disease reasons based upon referrals by the NYC Department of Health and Hospitals/Correctional Health Services.  Reinert Decl. ¶ 18.  If an inmate was housed at West for 14 or fewer consecutive days based on such a referral after February 1, 2020, that period is referred to as "Contagious Disease Time" and is not compensable.  Stipulation ¶¶ 20-22.  The proposed settlement contains these two exclusions because confinement in the Covered Facilities for either of these two reasons raises distinct issues from the confinement experienced by the class as a whole.

If every known Class Member participates in the proposed settlement, Defendants will pay a total of $53,018,550.00.  *Id.* ¶ 85.  The total payout can be increased by up to 7.5 percent if additional Class Members are identified during the claims administration process.  *Id.* ¶ 167.  Class Counsel will ask this Court to award up to 25 percent of the amount paid to Class Members for attorneys' fees and costs, which will be deducted pro rata from each Class Member's recovery.  *Id.* ¶ 95.

**B.    Class Members**

The proposed Class includes all Pretrial Detainees who were housed in any of the

5

Covered Facilities at any time between between March 18, 2018, and June 30, 2022, except those who served only Lock-Down Time or Contagious Disease Time. *Id.* ¶ 16.

### C.     Releases

Class Members who do not opt out of the proposed settlement will release all claims that were or could have been asserted in this action. *Id.* ¶ 66.

### D.     Attorneys' Fees and Costs

The Parties have agreed that pursuant to Fed. R. Civ. P. 23(h), Class Counsel may be paid reasonable attorneys' fees and costs up to 25 percent of Class Members' total recovery. *Id.* ¶ 95. After the conclusion of the claims administration process, Class Counsel will submit a fee application together with the motion for final approval of the proposed settlement. Class Counsel's fee application will set forth in detail the basis for and reasons supporting the application, and the Court will determine the appropriate award in its discretion.

### E.     Service Payments

In addition to the Named Plaintiffs' payments under the per-diem damages formula, the proposed settlement provides that each of the Named Plaintiffs will receive service payments of $20,000.00. *Id.* ¶ 176. Class Counsel will seek the Court's approval of the service payments simultaneously with their motion for final approval of the settlement. The Named Plaintiffs have expended significant time and resources in bringing and maintaining this action on behalf of the Class. They have responded to written discovery demands, consented to release of their medical records, been interviewed by Plaintiffs' expert witness, and consulted extensively with Class Counsel throughout the settlement process. Reinert Decl. ¶¶ 31-32. The Named Plaintiffs also rejected substantial Rule 68 Offers of Judgment, which exposed them to significant economic risk, and which was essential to reaching a class settlement that will result in tens of millions of

dollars being made available to absent Class Members. *Id.* ¶ 33. As we will demonstrate to the Court in due course, comparable incentive awards have been approved in similar circumstances.

### F.     Settlement Claims Administrator

The Parties have designated Rust Consulting, Inc. as the proposed settlement claims administrator (the "Administrator"). Stipulation ¶ 100. The City will pay all costs and expenses associated with the claims administration process (the Administrator has agreed to cap its fees at $295,000.00), including without limitation the Administrator's fees, all costs associated with the notice process, and all costs associated with the payment process. *Id.*

### G.     Claims Administration Procedure

Where, as here, the proposed settlement would bind Class Members, Rule 23 requires three distinct steps:

1. Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval;

2. Dissemination of mailed and/or published notice of settlement to all affected class members; and

3. A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* William B. Rubinstein, Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("Newberg"), §§ 13.10, *et seq.* (5th ed. 2011). This process protects the Class Members' procedural due process rights and enables the Court to fulfill its role as the guardian of the Class Members' interests.

Plaintiffs now request that the Court take the first step – granting preliminary approval of the settlement, conditionally certifying the class under Rule 23, approving the proposed notice

plan, appointing the Administrator, and authorizing the Administrator to send the proposed

notice to Class Members.

 The Parties respectfully submit the following proposed schedule for the notice and claims

administration process and for presenting the settlement to the Court for final approval:

1. While the Court is considering this motion for preliminary approval, the Parties and the Administrator shall work together constructively and in good faith to jointly create what the Stipulation refers to as the "Last Known Address List," which shall contain last known addresses for each Class Member and each person excluded from the class because they were the subject of a Lock-Down Order or served only Contagious Disease Time.  Stipulation ¶ 104.  The Parties and the Administrator shall use their best efforts to make the Last Known Address List as comprehensive and accurate as practicable, including by accessing all relevant and reasonably available databases maintained by DOC, the New York City Department of Probation, and the New York City Department of Social Services.  *Id.* ¶¶ 105-109.  In addition, the Administrator shall determine the best address match for each person by carrying out address research, including running each address provided by the City through the national change-of-address database and, where the address research does not provide a high-confidence result, performing CLEAR searches. *Id.* ¶ 106.

2. If the Court grants preliminary approval, the Administrator shall promptly generate drafts of the notice forms (in both English and Spanish) that will be mailed to each person on the Last Known Address List. *Id.* ¶ 114.  The draft notice form for each Class Member shall be in the form of the template attached as Exhibit C to the Stipulation, customized based on whether such Class Member was under the age of 22 or diagnosed with a serious mental illness during any days that he was confined in a Covered Facility.  The draft notice form for each Class Member shall set forth what the Stipulation refers to as the "Tentative Individual Payment Amount" for such Class Member. *Id.* ¶ 41.  Letters will also be sent to individuals who have been excluded from the class because the City's records indicate that the only time they spent in a Covered Facility was Lock-Down Time or Contagious Disease Time. *Id.* ¶¶ 114, 118-20.  These letters will provide such individuals information sufficient for them to challenge their putative exclusion from the class.

3. No later than 30 days after the Court grants preliminary approval, the Administrator shall present the relevant notice forms for each person on the Last Known Address List to class counsel for review and approval.  *Id.* ¶¶ 43, 116.

4. Within 60 days after the Court grants preliminary approval (the "Notice Date"), the Administrator shall cause the relevant notice forms (including, where appropriate, the claim form and the opt-out form) to be produced in English and Spanish and mailed to each Class Member at his or her last known address.  *Id.*

¶¶ 43, 117.  Within this time frame, the Administrator shall send emails to all persons for whom the Administrator can locate a reliable email address to notify them of this action and this Stipulation and providing links to the website address containing the appropriate notice forms.  *Id.* ¶ 121.

5.      Additionally, within two weeks after the Court grants preliminary approval, Defendants shall prominently post a notice summary in English and Spanish in DOC facilities (specifically, all intake areas, all law libraries, and in the court pens at the state courthouses that are under DOC control), New York City Department of Probation facilities (specifically, in the waiting areas of the adult supervision office for each borough in New York City in locations where individuals on probation are likely to see them, and as extensively as reasonably possible), in NYC Administration for Children's Services' field offices, and in locations directly serving clients in NYC Human Resources Administration offices.  *Id*. ¶ 125.  Defendants shall cause English and Spanish language versions of the notice summary to continue to be prominently posted and displayed in such facilities until the Court grants final approval.  *Id.*.

6.      Within 60 days after the Court grants preliminary approval, the Administrator shall establish a website, email address, and toll-free telephone number (that are accessible to both English and Spanish speakers, with a third-party language line translation service available for other language speakers as may be reasonably necessary) through which actual and prospective Class Members can access information, ask questions about the settlement process, provide the Administrator with an updated address and/or other contact information, obtain an electronic copy of their claim form and/or opt-out form, and electronically submit a claim form, opt-out form, or challenge.  *Id.* ¶ 129.

7.      Class Members may file a claim, an objection, or opt-out from the class within 60 days after the Notice Date.  *Id.* ¶¶ 46, 51, 59.  In the event that fewer than 75% percent of the class members submit claim forms or opt-out forms before this deadline, Class Members shall have an additional 120 days to file a claim, objection, or opt-out from the class.  *Id*. ¶¶ 47, 52, 60.[5]

8.      To the extent that any person not identified as a Class Member believes that he is a Class Member, and/or to the extent that any Class Member who has not been identified as being eligible for the increased payment amount based on being younger than 22 or having a serious mental illness, and/or to the extent that any Class Member believes that he was confined in one of the Covered Facilities for a number of days that exceeds the number of days shown on the Class List, and/or to the extent that any person believes he has been wrongly identified as having served Contagious Disease Time or Lock-Down Time, such person may avail

---

[5] This mechanism was extensively negotiated and will benefit Class Members who do not submit claim forms by the initial deadline.  Assuming fewer than 75% of Class Members meet that initial deadline, Class Counsel will have an additional 120 days to make targeted efforts to locate and provide advice to those Class Members who did not meet the initial deadline.

himself of the challenge procedure set forth in the Stipulation.  *Id.* ¶¶ 132-34.
Any such challenge must be filed within 60 days after the Notice Date.  *Id.* ¶ 48.
In the event that fewer than 75% percent of the Class Members submit claim
forms or opt-out forms before this initial deadline, the challenge deadline shall be
extended by an additional 120 days.  *Id.* ¶ 49.  For good cause shown, an
individual may be permitted to file a challenge no later than 60 days after these
deadlines.  *Id.* ¶ 135.

9.     After all claim forms have been processed and all challenges have been resolved,
       the Parties will prepare an Amended Class List which will reflect the identity of
       each Class Member who filed a claim and how much each Class Member will
       receive before deductions for attorneys' fees and costs.

10.    Class Counsel will move for final approval of the settlement no later than 21 days
       after the parties prepare the Amended Class List.  *Id.* ¶ 158.

11.    A final fairness hearing will be held as soon as is convenient for the Court after
       the end of the claims administration period.

12.    Once the Court has granted final approval and awarded attorneys' fees and costs
       to Class Counsel, the City and Class Counsel shall work together in good faith to
       calculate each Class Member's net individual payment anmount by reducing each
       class member's gross individual payment amount by a pro rata share of the total
       attorneys' fees and costs awarded to Class Counsel by the Court under Fed. R.
       Civ. P. 23(h).  *Id.* ¶ 166.  The City and Class Counsel shall use this information to
       jointly generate the Final Class List, which shall show each Class Member's net
       individual payment amount.  A Class Member's payment may be reduced based
       upon outstanding child support liens, docketed parking and Environmental
       Control Board judgments, docketed business tax warrants or judgments, and/or
       Medicare liens asserted by the federal government.  *Id.* ¶ 164.

13.    The City's obligation to pay Class Members shall become effective thirty days
       after the Court grants final approval and the time for appeal by any objectors
       expires (or, if an appeal is taken, when such appeal is resolved).  *Id.* ¶ 65.  As
       soon after this date as is practicable, and in no event more than 90 days after the
       Court grants final approval, the Administrator shall mail a check in the
       appropriate amount to each participating Class Member.  *Id.* ¶ 173.

# ARGUMENT

## I.     PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

Ultimately, this Court determines whether a proposed settlement is fair.  *In re Ivan F.*

*Boesky Sec. Litig.,* 948 F.2d 1358, 1368 (2d Cir. 1991); *Newman v. Stein,* 464 F.2d 689, 692 (2d

Cir. 1972).  But there is a presumption in favor of the compromise and settlement of class actions

as a matter of judicial policy.  *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *see also* Newberg § 13:44 ("Settlement is generally favored because it represents a compromise reached between the parties to the suit and relieves them, as well as the judicial system, of the costs and burdens of further litigation."); *Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472, 2012 WL 5862749, at *2 (S.D.N.Y. Nov. 15, 2012) ("Courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere."); *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376, at *12 (S.D.N.Y. Sept. 16, 2011) ("If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement.") (internal citation omitted).  "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."  *Wal-Mart Stores*, 396 F.3d at 116 (internal citation and quotation marks omitted).  In those circumstances, "[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."  *Hall v. ProSource Techs., LLC*, No. 14 Civ. 2502, 2016 WL 1555128, at *4 (E.D.N.Y. Apr. 11, 2016).

Under the recently amended Rule 23, preliminary approval is appropriate if the District Court "will be likely able to:  (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e)(1)(B); *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019).  This entails the consideration of the relevant factors for approval and certification.  *Gordon v. Vanda Pharms. Inc.*, No. 19 Civ. 1108,

2022 WL 4296092, at *2 (E.D.N.Y. Sept. 15, 2022).  The Second Circuit has identified nine factors to guide district courts in assessing approval and certification:  (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).  Rule 23(e)(2) identifies four other factors that are relevant to final approval:  (1) adequacy of representation; (2) existence of arm's-length negotiations; (3) adequacy of relief; and (4) equitableness of treatment of class members.  Fed. R. Civ. P. 23(e)(2).  These factors, which were added to the rule in 2018, "were intended to supplement, rather than displace" the factors set forth in *Grinnell.  GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 692 (citing Advisory Committee Notes).

Preliminary approval is the first step in the settlement approval process.  It simply allows notice of the proposed settlement to be made to class members and to allow class members to object to or opt out of the settlement.  *See* Newberg § 13:13 ("[T]he goal of preliminary approval is for a court to determine whether notice of the proposed settlement should be sent to the class, not to make a final determination of the settlement's fairness.").  After notice has been issued, the Court will be able to evaluate the fairness and reasonableness of the settlement with the benefit of Class Members' input.

## A.    Adequacy of the Named Plaintiffs and Their Counsel

Rule 23(e)(2)(A) requires the Court to assess the adequacy of the class representatives

and their counsel.  Fed. R. Civ. P. 23(e)(2)(A).  The adequacy requirement exists to ensure that

the class representative will "have an interest in vigorously pursuing the claims of the class, and

. . . have no interests antagonistic to the interests of other class members."  *Denney v. Deutsche*

*Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006).  It also ensures that "plaintiff's attorneys are

qualified, experienced and able to conduct the litigation."  *Cordes & Co. Fin. Servs., Inc. v. AG.*

*Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007).  The focus of the inquiry is uncovering

"conflicts of interest between named parties and the class they seek to represent."  *In re Flag*

*Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (*quoting Amchen Prods., Inc.*

*v. Windsor*, 521 U.S. 591, 625 (1997)).  The conflict "must be fundamental" to defeat a motion

for class certification.  *Id*. (*quoting In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124,

145 (2d Cir. 2001)).  Further, to satisfy the adequacy requirement, the named plaintiffs must

"possess the same interests and suffer the same injuries as the class members."  *In re Literary*

*Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011) (*quoting Amchen*

*Prods.*, 521 U.S. at 625-26).

In this case, the Named Plaintiffs are adequate representatives "because they suffered the

same injuries" as the absent Class Members.  *GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 692.

The interests of the Named Plaintiffs do not conflict in any way with the Class Members'

interests.  *See Ayzelman v. Statewide Credit Services Corp.*, 238 F.R.D. 358, 363-64 (E.D.N.Y.

2006) (adequacy satisfied where, *inter alia*, "there does not appear to be any antagonism between

plaintiffs' claims and those of the proposed class that would hinder plaintiffs' abilities to act as

class representatives").  To be sure, awards to the Named Plaintiffs and to Class Members will

vary, primarily based on the length of time served in the Covered Facilities.  But variations in compensation do not suggest inadequate representation.  *See*, *e.g.*, *Easterling v. Connecticut, Dep't of Correction*, 265 F.R.D. 45, 51 (D. Conn. 2010), *modified*, 278 F.R.D. 41 (D. Conn. 2011) ("Disagreement as to the type of damages sought, however, does not mean representation is inadequate."); *Walsh v. Northrop Grumman Corp.*, 162 F.R.D. 440, 447 (E.D.N.Y. 1995) (*quoting Robertson v. National Basketball Ass'n*, 389 F. Supp. 867, 899 (S.D.N.Y. 1975) (holding that, even though different plaintiffs sought different types of damages, "all players, past and present, seek damages for the same acts").  Indeed, there are no conflicting interests regarding compensation here because every Class Member – like every Named Plaintiff – will be compensated on the same per-diem basis for the days he spent in the Covered Facilities.  *See* Stipulation ¶¶ 81-82.

Plaintiffs have also selected counsel who are adequate to represent Class Members' interests.  Class Counsel have extensive backgrounds in litigating prisoners' rights actions, including class actions.  Indeed, most of the attorneys involved in this action were deemed adequate Class Counsel in a similar class action that resolved claims against the City for its unlawful confinement of pretrial detainees in solitary confinement.  *See Parker v. City of New York*, No. 15 Civ. 6733, 2018 WL 6338775, at *7 (E.D.N.Y. Dec. 4, 2018) (finding Messrs. Hecker, Mullkoff, and Reinert "to have had extensive experience litigating prisoners' rights cases and to be well-versed in the applicable law"); *see also Peoples v. Annucci*, 180 F. Supp. 3d 294, 308 (S.D.N.Y. 2016) (approving class settlement in litigation brought regarding the use of solitary confinement in New York State prisons, appointing Mr.  Reinert, among others, as Class Counsel, and observing that "[t]his litigation, and the way it has been handled by all of the attorneys, is the best example of the power of impact litigation to redress conditions that affect

the most vulnerable members of our society"); *Shariff v. Goord*, 235 F.R.D. 563, 572 (W.D.N.Y. 2006) (finding Mr. Reinert adequate to represent class of New York State prisoners who use wheelchairs for mobility); *Hilton v. Wright*, 235 F.R.D. 40, 52 (N.D.N.Y. 2006) (finding Mr. Reinert adequate to represent class of New York state prisoners with Hepatitis C); *T.F. v. Hennepin County*, No. 17 Civ. 1826, ECF No. 260 (D. Minn Dec. 19, 2019) (appointing Cuti Hecker Wang LLP class counsel in foster care class action).  Reinert Decl. ¶¶ 34-44.

The Court can have confidence that, if appointed as Class Counsel, Plaintiffs' Counsel will work diligently to ensure that Class Members are adequately informed and, if they wish, able to participate in the settlement.  In *Parker*, these same lawyers oversaw the administration of a settlement in which approximately 80 percent of class members filed claims, with not a single class member opting out.  *Parker*, 2018 WL 6338775, at *4.  An 80 percent participation rate is almost four times as high as rates which courts in this Circuit have approved as reflecting a "strong positive reaction" by class members.  *See Mendez v. MCSS Rest. Corp.*, No. 16 Civ. 2746, 2022 WL 3704591, at *7 (E.D.N.Y. Aug. 26, 2022); *see also Nichols v. Noom, Inc.*, No. 20 Civ. 3677, 2022 WL 2705354, at *9 (S.D.N.Y. July 12, 2022) (approving class action where 28 percent of class members filed claim forms); *Lora v. To-Rise, LLC*, 16 Civ. 3604, 2020 WL 8921400, at *3 (E.D.N.Y. June 3, 2020) (approving settlement where 23% of collective and class members who received notice and 22% of collective and class members who were sent the notice submitted claim forms); *Acevedo v. Workfit Med. LLC*, 187 F. Supp. 3d 370 (W.D.N.Y. 2016) (approving settlement with 21% participation rate, noting the "high participation rate for a 'claims made' settlement," which "regularly yield response rates of 10 percent or less") (internal citations omitted).

**B.      The Proposed Settlement Resulted from Arm's-Length Negotiations**

Rule 23(e)(2)(B) requires "requires procedural fairness, as evidenced by the fact that 'the proposal was negotiated at arms length.'" *GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 693 (quoting Rule 23(e)(2)(B)).  Procedural fairness is evaluated by examining "the negotiating process leading to settlement." *Wal-Mart Stores*, 396 F.3d at 116; *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).  A settlement enjoys a presumption of fairness where it is reached "after arm's length negotiations between experienced, capable counsel knowledgeable in complex class litigation." *GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 693 (internal quotation marks omitted).  This presumption is particularly appropriate where, as here, a mediator was heavily involved in the negotiations. *Id.*

Here, the Parties engaged in lengthy, complex, and vigorously contested negotiations. Not only did the Parties expend significant energy and time to reach agreement on the monetary per diem to which each Class Member is entitled, they also engaged in extensive and difficult negotiations regarding numerous additional issues, including but not limited to:  (1) the scope of the class, including whether Defendants had legitimate reasons for confining any class members in the Covered Facilities; (2) the production of discovery sufficient to identify Class Members, the existence of policies relevant to the conduct challenged by Plaintiffs, and the applicability of the BOC's Minimum Standards to this case; and (3) the specific terms of the claims administration process.  Moreover, the Parties engaged in extensive document discovery seeking the relevant policies, practices, and directives of DOC.  Reinert Decl. ¶ 10.  Although more discovery would be necessary if the case is not settled, the Parties have reviewed enough material to have a very good sense of the strengths and weaknesses of their respective positions.

Both Plaintiffs and Defendants were represented by experienced, capable counsel who engaged in more than 18 months of hard-fought settlement negotiations, mostly with the assistance of the Court-appointed mediator. *Id.* ¶¶ 14-15. All told, counsel for the Parties had 10 joint sessions with Ms. Price, and spent additional time meeting separately with Ms. Price when warranted. *Id.* ¶ 15. These sessions were crucial to resolving nearly every significant term of the settlement. *Cf. D'Amato*, 236 F.3d at 85 ("[A] court-appointed mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure."); *GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 693 (mediator's involvement confirms fairness of negotiations); *Lea v. Tal Educ. Grp.*, No. 18 Civ. 5480, 2021 WL 5578665, at *8 (S.D.N.Y. Nov. 30, 2021) (same). The Parties exchanged scores of drafts of the Stipulation, discussed terms in detail by video conference, telephone conference, and email, and negotiated over issues such as the amount of each Class Member's monetary settlement award, the structure and timing of payment of individual awards, the reduction of awards by child support liens and docketed parking judgments, the scope and method of class notice, the amount the City will pay to fund class notice, obtaining address and email information for class members from City agencies, and many other issues. Reinert Decl. ¶ 14. The Parties' "vigorous[]" litigation of the case and the settlement terms "further demonstrate[es] a lack of collusion." *Gordon*, 2022 WL 4296092, at *4.

Because the settlement process here was fair, arm's-length, and collusion-free, the resulting agreement is presumed to be fair, adequate, and reasonable.

### C. The Proposed Settlement Provides Adequate Relief for the Class

Rule 23(e)(2)(C) requires the Court to assess whether the relief proposed for the class is adequate, taking into account four factors: (i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including the timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).  Some of these factors overlap with the Second Circuit's *Grinnell* factors and as such will be discussed together.  All of them counsel in favor of preliminary approval.

1.      **The costs, risks, and delay of trial and appeal (*Grinnell* factors 1, 4, 5 & 6)**

This civil rights class action presents inherent challenges, including the potential for high costs and protracted litigation of complex factual and legal issues.  *See In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).  There are more than 4,400 Class Members.  Reinert Decl. ¶ 20.  Settlement avoids the need for resource-intensive motion practice, additional depositions, and trial, which favors judicial approval of the proposed agreement.  *See Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 663 (S.D.N.Y. 2015).  By reaching a favorable settlement before dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure a very significant recovery for the class.

Although Plaintiffs believe their case is strong, it is not without risk.  Establishing liability, especially in complex class action lawsuits, bears considerable risks.  *See In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12 Civ. 8557, 2014 WL 7323417, at *3 (S.D.N.Y. Dec. 19, 2014) ("[C]ourts have long recognized that [complex class action] litigation is notably difficult and notoriously uncertain, and that compromise is particularly appropriate.") (citation and internal quotations omitted).  Defendants deny any liability and assert nine affirmative defenses.  *See Ayzelman*, 242 F.R.D. at 27 (finding that first *Grinnell* factor favors settlement where

defendants denied liability and raised four affirmative defenses).  Although Plaintiffs are

confident that additional discovery would confirm that Defendants violated their due process

rights, extensive discovery would also be required to establish damages and to support Plaintiffs'

class certification motion.  This discovery would include: ESI production and review; additional

depositions of DOC employees, the named Plaintiffs, and various Class Members; and

substantial expert discovery.  After completing discovery, the Defendants would likely move for

summary judgment, involving complex constitutional issues.  Although Plaintiffs believe the

class would be certified and summary judgment denied, such motion practice presents significant

risks to the class.  If the Court determined that fact disputes precluded summary judgment, a

lengthy, fact-intensive trial would be necessary.

If Plaintiffs succeeded at trial, any judgment could be appealed, further extending the

litigation.  *Id.* ("Even assuming that plaintiffs were successful in defeating any pretrial motions

filed by defendants, and were able to establish defendants' liability at trial, there is always the

potential for an appeal, which would inevitably produce delay."); *see also Mikhlin v. Oasmia*

*Pharm. AB*, No. 19 Civ. 4349, 2021 WL 1259559, at *5 (E.D.N.Y. Jan. 6, 2021) (recognizing

risks inherent in trial and appeal of complex class actions).  By contrast, this proposed settlement

would promptly and efficiently provide significant monetary relief to participating Class

Members.  Settling this action on these terms balances the tangible and more immediate benefits

for the class with the risks of receiving no relief, or only limited relief, following a protracted

litigation.  *See Ingles v. Toro*, 438 F. Supp. 2d 203, 214 (S.D.N.Y. 2006).

In weighing the risks of establishing liability and damages, the Court "must only weigh

the likelihood of success by the plaintiff class against the relief offered by the settlement."  *In re*

*Austrian*, 80 F. Supp. 2d at 177 (internal quotation marks and citation omitted).  Here, Plaintiffs'

19

claims hinged on both complex legal and factual inquiries, including:  (1) the procedural and

substantive due process principles that apply to the confinement of Class Members in the

Covered Facilities; (2) the extent of procedural due process (if any) provided to Class Members

before or after they were placed in the Covered Facilities; and (3) whether Defendants' purpose

in confining Class Members in the Covered Facilities could be considered punitive.  Reinert

Decl. ¶ 7.  The legal and factual issues presented by this case have, to Plaintiffs' knowledge,

never been litigated to conclusion in this context.  *Id.*; *Ayzelman*, 242 F.R.D. at 27 (evaluating

risk in light of legal uncertainty of plaintiffs' theory of recovery).  The proposed settlement

eliminates this uncertainty and, as discussed below, provides significant compensation to the

class.  This factor therefore weighs in favor of preliminary approval.

      The risk of obtaining class certification and maintaining it through trial also is present.  A

motion for class certification under Rule 23 would require additional discovery and briefing.

There is risk that class certification would not be granted if that issue were to be litigated, or that

a certified class would be decertified by the end of trial or on appeal.  *See In re Initial Pub.*

*Offering Sec. Litig.*, 671 F. Supp. 2d 467, 482 (S.D.N.Y. 2009).  Settlement eliminates this risk,

expense, and delay.  This factor therefore favors preliminary approval.

      Defendants could defeat class certification, win a dispositive pre-trial motion, or obtain a

favorable verdict at trial, in which case Class Members would be left with no relief at all.  Even

if Plaintiffs win a favorable verdict and an award of damages, the verdict or damages award

could be reversed or reduced on appeal.  In contrast, "[t]he proposed settlement benefits each

plaintiff in that he or she will recover a monetary award immediately, without having to risk that

an outcome unfavorable to the plaintiffs will emerge from a trial."  *Velez v. Majik Cleaning*

*Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007).

Class Counsel are experienced and realistic and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The proposed settlement eliminates these uncertainties. Therefore, Rule 23(e)(2)(C)(i), the first *Grinnell* factor (the complexity, expense, and likely duration of the litigation), the fourth *Grinnell* factor (the risks of establishing liability), the fifth *Grinnell* factor (the risks of establishing damages), and the sixth *Grinnell* factor (the risks of maintaining the class action through the trial) all weigh in favor of approval.

## 2. Effectiveness of the Proposed Method of Distributing Relief

Rule 23(e)(2)(C)(ii) requires courts to examine "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." The method for processing claims proposed here "should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 40 (E.D.N.Y. 2019) (citing Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment). "To warrant approval, the plan of allocation must also meet the standards by which the settlement was scrutinized — namely, it must be fair and adequate . . . . [a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Id*. (*citing In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005)); *see also In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 180 (S.D.N.Y. 2014) ("When formulated by competent and experienced class counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis.").

The allocation of settlement awards to Class Members is straightforward and consistent with relevant precedent regarding confinement in restrictive conditions such as punitive

21

segregation:  each class member will receive either $400.00 or $450.00 per day of confinement in the Covered Facilities, reduced by up to 25 percent for attorneys' fees and costs, with the applicable per diem depending on whether the class member was a member of a vulnerable group when confined in a Covered Facility.  In the comparable *Parker* case, class members received less for each day of confinement in the harsher conditions of punitive segregation – a per diem of $175.00 per day for most class members, increased to $200.00 per day for class members who were diagnposed with a serious mental illness or who were under the age of 18. *Parker*, 2018 WL 6338775, at *2.  Here, as in *Parker*, each Class Member's settlement amount will not be affected by the number of claims submitted by Class Members.

The claims processing method uses well-established, effective procedures for receiving, processing, and validating claims.  *See Lea*, 2021 WL 5578665, at *11.  The Administrator will distribute hard copy claim forms in English and Spanish to Class Members by first-class mail. Stipulation  ¶ 117.  The Administrator will also make the claim form available on the settlement website.  Class Members can submit claims by returning the hard copy claim form in the envelope with pre-paid postage provided to them, by submitting it via email, or by submitting a claim online through the settlement website.  The identity of each Class Member will be determined initially by records maintained by DOC, but anyone excluded from the Class List may file a Challenge to establish that he should be included instead.  *Id.* ¶¶ 132-34.  Moreover, notice will be disseminated widely through various relevant City agencies and through Class Counsel's direct outreach to Class Members and indirect outreach to organizations that serve this population.  *Id.*  ¶¶ 124-28.

The proposed settlement also ensures that Class Members will have ample time to participate in, object to, or opt out of the settlement.  If fewer than 75 percent of the class

members identified on the Class List file claim forms or opt out within the initial notice period of 60 days, the period for class members to submit claim forms, object, or opt out shall be extended an additional 120 days.  *Id*. ¶¶ 47, 52, 60.  Plaintiffs' Counsel insisted on this mechanism because formerly incarcerated individuals often face challenges securing stable housing such that it is often necessary to attempt to contact such individuals through multiple means.  Reinert Decl. ¶ 27.  The proposed settlement provides enhanced mechanisms for locating and notifying Class Members, enabling the Administrator and Class Counsel to focus efforts on notifying class members who are particularly transient.  In the similar *Parker* litigation, the extended time for finding class members was essential to achieving such a high rate of participation among class members.  *Id*.  Moreover, Class Members can submit untimely claims upon a showing of good cause (as determined by the Administrator) for up to 60 days after the final notice period ends. Stipulation ¶ 135.

If the Court ultimately grants final approval of the proposed settlement, the Administrator will then distribute settlement checks to Class Members who have submitted valid claims, after a pro rata share has been deducted to cover Court-approved attorneys' fees and costs.  *Id*. ¶ 173. If those checks are returned to the Administrator, the Administrator will conduct additional address searches and reissue and resend checks.  *Id*. ¶ 181.

### 3.      The Terms of Any Proposed Award of Attorneys' Fees and Expenses

Rule 23(e)(2)(C)(iii) requires courts to examine "the terms of any proposed award of attorneys' fees, including timing of payment."  Here, Class Counsel's attorneys' fees and costs will be sought as a percentage of the aggregate recovery of the Class Members.  As detailed above, the Parties have agreed that after the conclusion of the administration process, Class Counsel will seek attorneys' fees and costs up to 25 percent of the amount claimed by the Class. Stipulation ¶¶ 94-95.  Unlike the more prevalent approach in which class counsel seeks a

percentage of the total amount theoretically made available to a class – regardless of the benefit actually conferred on class members, which often is a small fraction of the amount theoretically made available – the proposed approach in this case aligns Class Counsel's interest with Class Members' interests and incentivizes Class Counsel to locate as many Class Members as possible and inform them of and advise them about the settlement.  The Court need not evaluate the appropriate fee award now.  Class Counsel will brief that issue in detail in advance of the fairness hearing, at which point the Court will have substantially more information about the number of Class Members who submitted claims and thus the actual benefit to the Class.  *See Fulton Cnty. Employees' Ret. Sys. on Behalf of Goldman Sachs Grp. Inc. v. Blankfein*, No. 19 Civ. 1562, 2022 WL 4292894, at \*4 (S.D.N.Y. Sept. 16, 2022) (granting preliminary approval where agreement provided that Class Counsel would seek up to 25 percent of monetary compensation); *In re Take Two Interactive Sec. Litig.*, No. 06 Civ. 1131, 2010 WL 11613684, at \*11 (S.D.N.Y. June 29, 2010) (granting preliminary approval of settlement agreement without consideration of attorneys' fees as such fees would be determined by court order after the fairness hearing and final approval of the agreement); *see also* Theodore Eisenberg, Geoffrey Miller & Roy Germano, *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. Rev. 937, 950 tbl. 2 (2017) (study finding the mean and median percentage fees in class cases in the Southern District of New York from 2009 to 2013 were 27% and 31%, respectively).

### 4.   Any Agreement Required to be Identified Under Rule 23(e)(3)

Rule 23(e)(2)(C)(iv) requires courts to consider "any agreement required to be identified by Rule 23(e)(3)" – that is, "any agreement made in connection with the proposal."  Because the Parties have not entered into any agreements other than the Stipulation that has been submitted for approval, this factor poses no obstacle to preliminary approval.  *Rosenfeld v. Lenich*, No. 18 Civ. 6720, 2021 WL 508339, \*7 (E.D.N.Y. Feb. 11, 2021).

5.      Other *Grinnell* Adequacy Factors

The second *Grinnell* factor – the reaction of the class to the settlement – is neutral.

Because Class Members have not yet been notified of the settlement, the Court can analyze this

factor only after notice has been issued and Class Members have had an opportunity to opt out of

or object to the settlement.  *Parker v. City of New York*, No. 15 Civ. 6733, 2017 WL 6375736, at

*6 (E.D.N.Y. Dec. 11, 2017) (reaction of class to the settlement may be evaluated only after

notice of the proposed settlement has been sent to the class and the time for objections has

passed); *Ayzelman*, 242 F.R.D. at 365.  At this early stage in the process, the Named Plaintiffs

have expressed their approval of the settlement by authorizing counsel to enter into the

Stipulation.

The third *Grinnell* factor – the stage of the proceedings and the amount of discovery

completed –  also favors preliminary approval of the Stipulation.  The Parties have completed

enough discovery to conclude that settlement is appropriate.  The relevant inquiry "is whether

the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and

weaknesses of their claims and the adequacy of the settlement." *GSE Bonds Antitrust Litig.*,

2019 WL 6842332, at *4.  A sufficient factual investigation must have been conducted to afford

the Court a meaningful opportunity to appraise the settlement.  *Austrian and German Bank*

*Holocaust Litig.,* 80 F. Supp. 2d at 176.  In addition, "[t]he pretrial negotiations and discovery

must be sufficiently adversarial that they are not designed to justify a settlement" but rather "an

aggressive effort to ferret out facts helpful to the prosecution of the suit."  *Id.* (*quoting Martens v.*

*Smith Barney, Inc.,* 181 F.R.D. 243, 263 (S.D.N.Y.1998)).  The relevant question at this stage is

whether the Parties have made sufficient efforts to obtain "adequate knowledge of the strengths

and weaknesses of their respective claims and defenses, as well as what trial would likely entail."

*Hall*, 2016 WL 1555128, at *7.

The discovery conducted to date satisfies this standard.  Plaintiffs' counsel interviewed current and former DOC detainees to understand the application and impact of the practices at issue, obtained documents *via* FOIL requests from the BOC (a non-party familiar with the application and impact of DOC's practices), served formal discovery demands and reviewed thousands of pages of documents produced by Defendants, conducted depositions of DOC officials, conducted two in-person site visits, and consulted with a psychiatric expert (who reviewed discovery and met with the Named Plaintiffs).  Reinert Decl. ¶¶ 10-13.  This is comparable to numerous cases in which courts have approved proposed class action settlements. *See Hall*, 2016 WL 1555128, at *7 (finding factor satisfied where Class Counsel interviewed several employees, obtained and analyzed thousands of pages of documents, exchanged formal discovery demands, and engaged in mediation and extensive settlement negotiations); *Ballinger v. Advance Magazine Publishers, Inc.*, No. 13 Civ. 4036, 2014 WL 7495092, at *2 (S.D.N.Y. Dec. 29, 2014) (granting preliminary approval where case was "settled before depositions were conducted, . . . [but] both sides were well acquainted with the facts"); *Sewell v. Bovis Lend Lease, Inc*., No. 09 Civ. 6548, 2012 WL 1320124, at *8 (S.D.N.Y. Apr. 16, 2012) (granting final approval where the parties exchanged documents and Plaintiffs' counsel interviewed class members); *Matheson v. T–Bone Rest., LLC*, No. 09 Civ. 4214, 2011 WL 6268216, at *5 (S.D.N.Y. Dec. 13, 2011) (granting final approval where parties engaged in an informal exchange of information, and no depositions were taken); *Diaz v. E. Locating Serv., Inc.,* No. 10 Civ. 4082, 2010 WL 5507912, at *5 (S.D.N.Y. Nov. 29, 2010) (granting final approval where the parties had exchanged informal discovery including pre-suit exchange of documents); *Alleyne v. Time Moving & Storage Inc.,* 264 F.R.D. 41, 56–57 (E.D.N.Y. 2010) (granting final approval where the parties agreed to a settlement before exchanging formal discovery).

Plaintiffs used this information not only to marshal proof of Defendants' policies and practices, but also to understand the strengths and weaknesses of their liability and damages claims.

Regarding the seventh *Grinnell* factor, the City is a municipality and therefore "has the ability to withstand a greater judgment." *Wright v. Stern*, 553 F. Supp. 2d 337, 347 (S.D.N.Y. 2008). But even if the settlement does not empty Defendants' coffers, it still can be found adequate. *Parker*, 2018 WL 6338775, at *6; *Stinson v. City of New York*, 256 F. Supp. 32 283, 294 (S.D.N.Y. 2017); *see also Austrian and German Bank Holocaust Litig.*, 80 F. Supp. at 178 n.9. Therefore, this factor is neutral and does not weigh against preliminary approval.

The eighth *Grinnell* factor – the range of reasonableness of the settlement in light of the best possible recovery – and the ninth *Grinnell* factor – the range of reasonableness of the settlement to a possible recovery in light of all the attendant risks of litigation – both favor preliminary approval of the Stipulation. These factors are "often combined for the purposes of analysis." *Payment Card*, 330 F.R.D. at 47-48. "In considering the reasonableness of the settlement fund, a court must compare the terms of the compromise with the likely rewards of litigation." *Id.* at 48.

The settlement amount represents substantial value given the risks of litigation. The determination of whether a settlement amount is reasonable "is not susceptible of a mathematical equation yielding a particularized sum." *Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 (internal quotation marks omitted); *see also Ballinger*, 2014 WL 7495092, at *3 ("The inquiry with respect to this factor is to see whether the settlement falls below the lowest point in the range of reasonableness.") (internal quotation marks omitted). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in

taking any litigation to completion.'" *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (*quoting Newman*, 464 F.2d at 693). "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n.2.

Here, the settlement provides significantly more than "a fraction of the potential recovery." *Initial Pub. Offering Secs. Litig.*, 671 F. Supp. 2d at 483-85 (approving settlement that provided only a "miniscule" 2% of defendants' maximum possible liability and observing that "[t]he Second Circuit has held that a settlement amount of even a fraction of the potential recovery does not render a proposed settlement inadequate"). The settlement provides compensation (net of attorney's fees and costs) of at least $300 for each day that class members were held in the Covered Facilities, with slightly greater compensation (at least $337.50) for each day spent in such facilities when a Class Member was under the age of 22 or suffered from a serious mental illness. The settlement here is similar to the relief provided to plaintiffs who proceeded to trial and prevailed in cases involving solitary confinement, which imposes even greater restrictions on incarcerated individuals. For example, in *Almighty Supreme Born Allah v. Milling*, No. 11 Civ. 668, 2016 WL 1311997 (D. Conn. Apr. 4, 2016), the Court awarded damages after trial of $175.00 per day for a pretrial detainee who established that he was wrongfully held in solitary confinement in Connecticut. Notably, that decision was reversed on appeal on qualified immunity grounds. *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48 (2d Cir. 2017). And a prisoner who challenged a similar policy in Massachusetts was awarded $100.00 per day by the Court, with that judgment also reversed on qualified immunity grounds. *Ford v. Bender*, No. 07 Civ. 11457, 2012 WL 262532, at *16 (D. Mass. Jan. 27, 2012), *vacated and reversed*, 768 F.3d 15 (1st Cir. 2014). Most recently, a Court in this District entered a

default judgment of $200.00 per day in compensatory damages for a convicted individual with mental illness who was wrongfully held in solitary confinement. *See Greenburger v. Roundtree*, No. 17 Civ. 03295, 2020 WL 6561598, at \*9 (S.D.N.Y. Jan. 16, 2020), *report and recommendation adopted*, 2020 WL 4746460 (S.D.N.Y. Aug. 16, 2020). Indeed, there are many cases in which courts have ordered smaller judgments for people in prison or jails who were wrongfully held in solitary confinement. Reinert Decl. ¶ 21.

Although it is possible that, after trial, a jury would award more substantial damages if it found that confinement in the Covered Facilities was particularly harmful, weighing the benefits of the settlement against the available evidence and the risks associated with proceeding in the litigation, the settlement amount is plainly reasonable. *See Hall v. Children's Place Retail Stores, Inc.*, 669 F. Supp. 2d 399, 402 n. 30 (S.D.N.Y. 2009) (approving settlement that amounted to 5-12% recovery of provable damages); *In re Crazy Eddie Secs. Litig.*, 824 F. Supp. 320, 324 (E.D.N.Y. 1993) (approving settlement that awarded class members between 6 and 10 cents for every dollar lost).

Further, the proposed settlement limits the liens and judgments that can be asserted against a Class Member's award, and offers valuable no-cost counseling to Class Members regarding how an award may affect their public benefits. Stipulation ¶¶ 161, 165. These terms provide financial benefit to Class Members that may not have been available even had they succeeded at trial. Reinert Decl. ¶ 22. Finally, there are significant risks of litigation – loss at the summary judgment stage, loss of class certification, loss at trial, or loss on appeal – that might result in Class Members receiving no recovery at all. Thus, the proposed settlement provides better recovery to Class Members as compared to possible recovery in light of litigation

risks.  *See Frank*, 228 F.R.D. at 186 (determining reasonable settlement amount "does not involve the use of a mathematical equation yielding a particularized sum").

### D.       The Proposed Settlement Treats Class Members Equitably

Rule 23(e)(2)(d) finally requires the Court to consider whether "the proposal treats class members equitably relative to each other."  That is true here because each Class Member will receive the same per diem payment depending on his age and mental condition during the days he was confined in the Covered Facilities.  In other words, net of attorney's fees and costs, all Class Members will receive at least $300.00 for each day spent in a Covered Facility; Class Members who were housed in a Covered Facility only when they were less than 22 and/or suffered from a serious mental illness will receive at least $337.50 per day; and some Class Members – for example, those who spent time in a Covered Facility both before and after turning 22 – will receive compensation that reflects a blend of these per-diem rates.[6]  Class Members who believe that they are entitled to more compensation than that provided by this settlement because they suffered discrete harms – whether as young adults, as people with serious mental illennss, or for some other reason – can choose to opt out and bring claims on their own.

Given the legal and factual disputes that persist, the proposed settlement represents a substantial recovery for class members.  Application of Rule 23(e)(2) and the *Grinnell* factors weighs in favor of granting preliminary approval.  In the event that a substantial number of objectors come forward with meritorious objections, the Court can reevaluate its determination then.  But because this settlement, on its face, is "fair, adequate, and reasonable, and not a product of collusion," *Frank*, 228 F.R.D. at 184, the Court should grant preliminary approval.

---

[6] Class Members will receive a higher per diem for days spent in a Covered Facility when they were younger than 22 or had a serious mental illness because young adults and people with mental illness are particularly vulnerable to the deleterious consequences of isolation confinement.  Reinert Decl. ¶17.

## II.    CONDITIONAL CERTIFICATION OF THE CLASS IS APPROPRIATE

Plaintiffs seek to certify a class under Federal Rule of Civil Procedure 23(e) in order to consummate the proposed settlement.  As discussed below, the proposed settlement class meets all of the requirements for class certification, and Defendants do not oppose certification. Stipulation ¶ 89; *County of Suffolk v. Long Island Lighting Co*., 710 F. Supp. 1422, 1424 (E.D.N.Y. 1989), *aff'd in part, rev'd in part on other grounds*, 907 F.2d 1295 (2d Cir. 1990) ("It is appropriate for the parties to a class action suit to negotiate a proposed settlement of the action prior to certification of the class.").

Certifying a settlement class and appointing Class Counsel serve several practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of the terms of the settlement, and setting the date and time of the final approval hearing.  *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 790-92 (3d Cir. 1995) (noting practical purposes of provisionally certifying settlement class).

Under Rule 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b).  Rule 23(a) requires that:

(1)    the class is so numerous that joinder of all members is impracticable;
(2)    there are questions of law or fact common to the class;
(3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Rule 23(b)(3) requires the court to find that:

"[Q]uestions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

*Id.* (b)(3).

### A.  Numerosity

"[N]umerosity is presumed at a level of 40 members."  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  Plaintiffs easily satisfy this requirement because there are more than 4,400 class members.  Reinert Decl. ¶ 20.

In addition, the class is ascertainable.  DOC maintains records denoting whether a Pretrial Detainee was confined in the Covered Facilities, how long they were confined there, and whether they were under the age of 22 or had a serious mental illness during some or all of their confinement, and any inaccuracies in those records can be the subject of specific challenges. *See In re Petrobras*, 862 F.3d 250, 257 (2d Cir. 2017) ("a class is ascertainable if it is defined using objective criteria that establish a membership with definite boundaries").

### B.     Commonality

The proposed settlement class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Gen. Tel. Co. of the Southwest. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  The Rule is satisfied if there is a single issue common to all members of the class, so long as common questions are at the "core of the cause of action alleged."  *Ayzelman*, 238 F.R.D. at 363 (internal quotation marks omitted); *see also Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997) ("The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact."); *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198 (S.D.N.Y. 1992) ("Commonality does not mandate that all class members make identical claims and arguments, only that common issues of fact or law affect all class members.").

This case involves several common factual and legal issues, including whether Defendants confined class members in the Covered Facilities for the purpose of punishment and/or whether the confinement had the effect of imposing punishment, whether confinement of Pretrial Detainees in the Covered Facilities was reasonably related to a legitimate governmental objective, whether Pretrial Detainees had a liberty interest in avoiding confinement in the Covered Facilities, and what process Pretrial Detainees were due before being confined in the Covered Facilities.  The alleged violations – involving common operative facts that affected class members in the same way – are sufficient to meet Rule 23(a)'s commonality requirement. *See Johnson v. Nextel Comms. Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) ("Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question."); *V.W. by & through Williams v. Conway*, 236 F. Supp. 3d 554 (N.D.N.Y. 2017) (finding commonality met in constitutional challenge to policies regarding, *inter alia*, use of solitary confinement for juveniles); *see also Butler v. Suffolk Cty.*, 289 F.R.D. 80, 98 (E.D.N.Y. 2013) ("Whether the County was aware of and deliberately indifferent to the conditions at the [jail] is a common question subject to class-wide resolution."); *Parsons v. Ryan*, 754 F.3d 657, 681 (9th Cir. 2014) (observing that "numerous courts have concluded that the commonality requirement can be satisfied by proof of the existence of systemic policies and practices that allegedly expose inmates to a substantial risk of harm").

### C.   Typicality

Rule 23 requires that the claims of the representative parties be typical of the claims of the class.  As with commonality, typicality does not require that the Named Plaintiffs' claims be identical in all respects to those of other Class Members.  The standard is satisfied "when each class member's claim arises from the same course of events, and each class member makes

similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376 (internal

quotation marks omitted); *Robidoux v. Celani,* 987 F.2d 931, 936 (2d Cir.1993); *Stinson v. City*

*of New York*, 282 F.R.D. 360, 370-71 (S.D.N.Y. 2012).  "When the same unlawful conduct was

directed at or affected both the named plaintiffs and the prospective class, typicality is usually

met." *Stinson*, 282 F.R.D. at 371.

In this case, the Named Plaintiffs and the Class Members all served time in the Covered

Facilities as Pretrial Detainees pursuant to the Defendants' practices and all suffered the same

alleged constitutional violations.  This satisfies the typicality requirement.  *See Ayzelman*, 238

F.R.D. at 363 (typicality satisfied when "each class member was allegedly harassed or abused by

debt collection letters that are substantially similar in nature to the ones received by plaintiffs");

*V.W. by & through Williams*, 236 F. Supp. 3d at 576 (typicality satisfied when plaintiffs' claims

were "based on the common application of certain challenged policies" involving conditions of

confinement for juveniles, including solitary confinement).

## D.    Adequacy of the Named Plaintiffs and Their Counsel

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect

the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This requirement has been addressed above.

*Infra* I.A.  The Named Plaintiffs incurred significant risk to bring this case to completion,

including by declining substantial Rule 68 Offers of Judgment at their own peril.  Reinert Decl.

¶ 33.  The Named Plaintiffs have demonstrated without reservation that their interests align with

the class.  *See Ayzelman*, 238 F.R.D. at 363-364 (adequacy satisfied where, *inter alia*, "there

does not appear to be any antagonism between plaintiffs' claims and those of the proposed class

that would hinder plaintiffs' abilities to act as class representatives").  Variation in total damages

for class members and the named Plaintiffs does not create conflict, especially here where

compensation paid to all class members is based on per diem calculations related to the amount of time each class member spent in the Covered Facilities.

### E.      Certification Is Proper Under Rule 23(b)(3)

Rule 23(b)(3) requires that the common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods., Inc.*, 521 U.S. at 594.

### 1.      Common Questions Predominate

Predominance is established where plaintiffs demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof."  *Cordes & Co. Fin. Servs., Inc.*, 502 F.3d at 107-08  (internal quotation marks omitted).  The predominance requirement is "more demanding than the Rule 23(a) commonality inquiry and is designed to determine whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Frank*, 228 F.R.D. at 183 (quoting *Amchem*, 521 U.S. at 623) (internal quotation marks omitted).

Here, Plaintiffs' common contentions regarding the constitutionality of Class Members' confinement in the Covered Facilities predominate over any factual or legal variations among class members.  *Betances v. Fischer*, 304 F.R.D. 416, 429 (S.D.N.Y. 2015) (predominance satisfied where common proof could be used to establish defendant correction officials' liability for alleged violation of plaintiffs' constitutional rights); *Ayzelman*, 238 F.R.D. at 364 (finding predominance satisfied in case in which plaintiffs alleged that defendants had common debt collection practices).  As noted by the Second Circuit, "when plaintiffs are allegedly aggrieved

by a single policy of defendants, such as the blanket policy at issue here, the case presents

precisely the type of situation for which the class action device is suited since many nearly

identical litigations can be adjudicated in unison." *In re Nassau County Strip Search Cases*, 461

F.3d 219, 228 (2d Cir. 2006) (internal quotations and citation omitted).

### 2.    A Class Action Is a Superior Mechanism

The second part of the Rule 23(b)(3) analysis examines whether "the class action device

[is] superior to other methods available for a fair and efficient adjudication of the controversy."

*Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968).  The class action device is superior in

this case because Class Members have limited financial resources with which to prosecute

individual actions and, to Plaintiffs' counsel's knowledge, there have been very few individual

suits brought alleging the same violations.  *See* Fed. R. Civ. P. 23(b)(3); *Cazares v. AVA Rest.*

*Corp.*, No. 15 Civ. 477, 2017 WL 1229727, at *8 (E.D.N.Y. Mar. 31, 2017) (class action favored

device where class members have limited resources); *accord Flores v. Mamma Lombardi's of*

*Holbrook, Inc.*, 104 F. Supp. 3d 290, 298 (E.D.N.Y. 2015) (class action superior because class

members have limited resources, "lack the means to prosecute individual actions, are likely to be

similarly situated, and there is no evidence that class members would have a strong interest in

controlling the suit themselves").  In addition, employing the class device here will achieve

economies of scale, will conserve the resources of the judicial system, and will avoid the waste

and delay of repetitive proceedings and inconsistent adjudications of similar issues and claims.

*Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010) (holding that the proposed class action

will "achieve economies of time, effort, and expense, and promote uniformity of decision as to

persons similarly situated, without sacrificing procedural fairness or bringing about other

undesirable results") (internal quotation marks and citation omitted).

### III.    PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Rule 23(g), which governs the standards and framework for appointing class counsel for a certified class, sets forth four criteria the Court must consider in evaluating the adequacy of proposed counsel:  (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law"; and (4) "the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A).  The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).  The Advisory Committee has noted that "[n]o single factor should necessarily be determinative in a given case."  Fed. R. Civ. P. 23(g) (Advisory Committee's note).

Plaintiffs' counsel satisfy these criteria.  They have done substantial work identifying, investigating, negotiating, and settling Plaintiffs' and class members' claims.  Reinert Decl. ¶¶ 9-15.  Plaintiffs' counsel have substantial experience prosecuting and settling civil rights actions involving the rights of incarcerated people.  *Id.* ¶¶ 34-44.  Plaintiffs' counsel also have been found to be adequate class counsel in other significant prisoners' rights class actions.  *Id.*

### IV.    THE NOTICE PLAN AND AWARD DISTRIBUTION PROCESS ARE APPROPRIATE

The proposed notice plan fully complies with due process and Federal Rule of Civil Procedure 23.  Pursuant to Rule 23(c)(2)(B), the notice must provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort [and] must clearly and concisely state in plain, easily understood language:

      (i)     the nature of the action;
      (ii)    the definition of the class certified;

(ii)    the class claims, issues, or defenses;

(iii)   that a class member may enter an appearance through an attorney if the member so desires;

(iv)    that the court will exclude from the class any member who requests exclusion;

(v)     the time and manner for requesting exclusion; and

(vi)    the binding effect of a class judgment on members under Rule 23(c)(3)."

Fed. R. Civ. P. 23(c)(2)(B).

The proposed notice form satisfies each of these requirements.  The notice is written in plain language and is organized and formatted as clearly as possible.  Additionally, the notice describes the terms of the settlement, informs the class about the allocation of attorneys' fees and costs, and provides specific information regarding the date, time, and place of the final approval hearing.  *See* Ex. C to Stipulation (Notice).  It also is individually tailored to inform each Class Member precisely of the minimum amount he will receive if he participates in the settlement.

A notice summary also will be displayed in various government facilities for the benefit of potential class members who may not have received their individualized notice forms, and Class Counsel will work diligently to disseminate it as widely as is reasonably possible.

The Administrator will take reasonable steps to obtain the correct addresses of any class member whose notice is returned as undeliverable.  Stipulation ¶ 181.

## V.    RUST CONSULTING, INC. SHOULD BE APPOINTED AS CLAIMS ADMINISTRATOR

Finally, Plaintiffs respectfully request that the Court appoint Rust Consulting, Inc. as Claims Administrator.  Rust has extensive experience administering class actions, including those involving incarcerated and formerly incarcerated persons.  The Parties have jointly reviewed and approved Rust's proposal regarding the claims administration process, after soliciting, receiving, and evaluating other competing proposals.  Reinert Decl. ¶ 45.  Plaintiffs' Counsel are confident that Rust will serve the class well.

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court preliminarily approve the settlement, conditionally certify the class, appoint class counsel, and enter the Proposed Administrative Order (Ex. L to Stipulation).

Dated:  April 19, 2023
        New York, New York

Respectfully submitted,

   /s/ Alexander Reinert_____
Alexander Reinert
55 Fifth Avenue, Room 1005
New York, NY 10003
(646) 592-6543
areinert@yu.edu

CUTI HECKER WANG LLP
John R. Cuti
Eric Hecker
Alexander Goldenberg
Daniel Mullkoff
305 Broadway, Sixth Floor
New York, NY 10007
(212) 620-2600
jcuti@chwllp.com

*Attorneys for the Named Plaintiffs*